**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-01415-NYW-MEH

IVAN ANTONIO LARA-ESPERANZA,

    Plaintiff,

v.

ALEJANDRO MAYORKAS,
UR JADDOU, and
LOREN MILLER,

    Defendants.

---

**ORDER ON MOTION TO DISMISS**

---

This matter is before the Court on the Motion to Dismiss for Lack of Jurisdiction (the "Motion" or "Motion to Dismiss") filed on August 7, 2023. [Doc. 9]. The Court has reviewed the Motion, the Parties' briefing, and the applicable case law, and concludes that oral argument would not materially assist in the resolution of the Motion. For the reasons set forth in this Order, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

Under the Immigration and Nationality Act ("INA"), one way that a person may become a lawful permanent resident of the United States is through a familial relationship with a United States citizen. *See* 8 U.S.C. § 1154(a)(1)(A)(i); *Atieh v. Riordan*, 797 F.3d 135, 138 (1st Cir. 2015). To initiate this process, the citizen family member must file a Form I-130 petition on behalf of their noncitizen relative. *See* 8 U.S.C. § 1154(a)(1)(A)(i); *see also Granados v. United States*, No. 23-cv-00250-MEH, 2023 WL 5831515, at *1 (D. Colo. Aug. 23, 2023); [Doc. 1 at ¶ 3]. If the Form I-130 is approved by the United States Citizenship and Immigration Service ("USCIS"), the

noncitizen applicant must attend an interview at a United States embassy or consulate, 8 U.S.C. § 1202(h), and must also demonstrate that they are eligible for an immigrant visa and "admissible" to the United States. *See id.* § 1255(a).

A person who has been "unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of [his] departure . . . from the United States," is considered "inadmissible" to the United States. *Id.* § 1182(a)(9)(B)(i). In other words, an applicant who leaves the United States (to attend their visa interview at a United States embassy, for example) would be ineligible to seek readmission to the United States for ten years. *See Echeverri v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-21711-RAR, 2023 WL 5350810, at *1 (S.D. Fla. Aug. 21, 2023) ("The problem is obvious: one law requires [the applicant] to leave the country and the other prevents them from returning.").

However, the applicant may apply for a waiver of "unlawful presence" by filing a Form I-601A, "Application for Provisional Unlawful Presence Waiver." *See* 8 U.S.C. § 1182(a)(9)(B)(v); 8 C.F.R. § 212.7(e); *see also* [Doc. 1 at ¶ 5]. The Attorney General of the United States[1] has "sole discretion" to waive inadmissibility on the basis of unlawful presence if the applicant can show that the refusal to admit him "would result in extreme hardship to the citizen or lawfully resident spouse or parent of" the applicant. 8 U.S.C. § 1182(a)(9)(B)(v). "If the waiver is approved, it goes into effect after the noncitizen leaves the United States, appears at their visa interview, and

---

[1] As Defendants explain, *see* [Doc. 9 at 7 n.5], "[i]n 2002, Congress abolished the Immigration and Naturalization Service . . . and transferred jurisdiction to enforce and administer the nation's immigration laws from the Attorney General to the Secretary of Homeland Security." *La. Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Lab.*, 745 F.3d 653, 659 (3d Cir. 2014); *see also Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2280 n.1 (2021) (explaining that "[a]lthough many of the provisions [in the INA] refer to the Attorney General, Congress has also empowered the Secretary of Homeland Security to enforce" the INA). Thus, while the statutory provisions at issue in this case reference the United States Attorney General, the Court uses "USCIS" interchangeably to identify the government actor.

'[i]s determined to be otherwise eligible for an immigrant visa.'" *Granados*, 2023 WL 5831515, at *1 (alteration in original) (quoting 8 C.F.R. § 212.7(e)(12)(i)).

In this action, Plaintiff Ivan Antonio Lara-Esperanza ("Plaintiff" or "Mr. Lara-Esperanza") seeks to compel Defendants Alejandro Mayorkas, the Secretary of Homeland Security; Ur Jaddou, the Director of USCIS; and Loren Miller, the Director of the USCIS Nebraska Service Center (collectively, "Defendants") to adjudicate his I-601A application. [Doc. 1 at ¶ 6].[2]

Mr. Lara-Esperanza is a citizen of El Salvador who seeks to become a citizen of the United States. [*Id.* at ¶¶ 3–4, 10]. Mr. Lara-Esperanza entered the United States on or about August 5, 2010, without inspection or admission; thus, he must obtain a provisional unlawful presence waiver to become a lawful permanent resident. [*Id.* at ¶¶ 14, 16]. On November 30, 2018, USCIS approved the Form I-130 petition that Mr. Lara-Esperanza's wife filed on his behalf. [*Id.* at ¶ 15]. Mr. Lara-Esperanza then filed his I-601A application with USCIS on or about April 17, 2020. [*Id.* at ¶ 20]. USCIS has not adjudicated Mr. Lara-Esperanza's application in the 42 months since. [*Id.* at ¶¶ 20–21]. He asserts that this delay is unreasonable and violates USCIS's ministerial duty to process his application. [*Id.* at ¶ 21].

Mr. Lara-Esperanza initiated this lawsuit on June 4, 2023 to compel Defendants to take action on his I-601A application. [*Id.* at ¶ 6]. He asserts two claims: one alleging a violation of the Administrative Procedure Act ("APA"), and the other asserted under the Mandamus Act. [*Id.* at ¶¶ 41–48]. The Complaint for Declaratory Judgment and to Compel Agency Action ("Complaint") asserts three separate bases of federal jurisdiction: (1) the APA; (2) the Mandamus

---

[2] The Nebraska Service Center is "the USCIS office responsible for the adjudication of the I-601A application filed by Mr. Lara-Esperanza." [Doc. 1 at ¶ 13].

Act; and (3) 28 U.S.C. § 1331. [*Id.* at ¶¶ 7–8].[3] Defendants now move to dismiss Mr. Lara-Esperanza's case for lack of subject matter jurisdiction. *See generally* [Doc. 9].

## LEGAL STANDARD

Under Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim. Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) (quotation omitted). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

Attacks on subject matter jurisdiction may take two different forms—a facial attack or a factual attack—which implicate different analytical frameworks. The United States Court of Appeals for the Tenth Circuit has explained that

> [m]otions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms. First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

---

[3] Plaintiff also asserts that this Court has subject matter jurisdiction pursuant to 8 U.S.C. § 1329. *See* [Doc. 1 at ¶ 7]. This statute says that federal district courts "shall have jurisdiction of all causes, civil and criminal, *brought by the United States* that arise under the provisions of this subchapter." 8 U.S.C. § 1329 (emphasis added). This action was not initiated by the United States and thus does not confer subject matter jurisdiction upon this Court.

4

*United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotations and citations omitted)). Here, Defendants assert a facial jurisdictional challenge. [Doc. 9 at 5 n.4]. The Court thus accepts all allegations in the Complaint as true and determines whether, based on the allegations in the Complaint, this Court has subject matter jurisdiction to hear this case.

## ANALYSIS

According to Defendants, this Court lacks subject matter jurisdiction over "an unreasonable delay claim based on the processing of Plaintiff's unlawful presence waiver application." [*Id.* at 5]. Defendants' arguments are directed at each of Plaintiff's claims separately. *See* [*id.* at 5, 10]. The Court begins with Mr. Lara-Esperanza's APA claim before turning to his mandamus claim.

**I.    The APA Claim**

First, Defendants contend that this Court lacks jurisdiction over Plaintiff's first claim because "it is well established that there is no jurisdiction under the APA where the statute precludes judicial review, . . . as it does here." [*Id.* at 5]; *see also* 5 U.S.C. § 701(a)(1) ("This chapter [governing judicial review] applies, . . . except to the extent that . . . statutes preclude judicial review."). Defendants argue that judicial review of USCIS's delay is precluded by the following language in the INA:

> The Attorney General has sole discretion to waive [the accrual of unlawful presence] in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of [a person] lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant . . . would result in extreme hardship to the citizen or lawfully resident spouse or parent of such [person]. No court shall have jurisdiction to review a *decision or action* by the Attorney General regarding a waiver under this clause.

5

8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added). Defendants contend that this language "should be read to preclude judicial review of all USCIS actions or *inactions* related to how and when waivers are adjudicated." [Doc. 9 at 6 (emphasis in original)]. According to Defendants, "[a] broad reading of 'action' is consistent with" the statutory text and how the term "agency action" is defined in the APA, [*id.*], which provides that "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act*." 5 U.S.C. § 551(13) (emphasis added).

Plaintiff disagrees that he asks the Court to review an agency "decision" or "action"; instead, he contends, he "is asking the Court to order the Defendants to do what they are legally required to do, namely, to adjudicate [his] I-601A waiver application." [Doc. 11 at 2]. According to Plaintiff, Defendants' interpretation of § 1182 improperly adds language to the statute by conflating an agency *action* with agency *in*action. [*Id.*]. He also maintains that the APA's definition of "agency action" does not apply to the term "action" as used in the INA's waiver provision. [*Id.* at 2–3]. Defendants concede that the APA's definition of "agency action" is "only mandatory within the context of the APA," *see* [Doc. 12 at 4]; *see also Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 200 (4th Cir. 2013) ("[T]he APA's definitions are only mandatory in the context of the APA itself."),[4] but nevertheless

---

[4] The Parties do not cite any Tenth Circuit or Supreme Court authority discussing the propriety of relying on definitions contained in the APA in construing the INA. The APA specifically states that the definitions contained therein are "[f]or the purpose of this subchapter." 5 U.S.C. § 551. Because the Parties agree that the APA definition is not mandatory, the Court need not rely on the APA definition. *See Soneji v. Dep't of Homeland Sec.*, 525 F. Supp. 2d 1151, 1154 n.2 (N.D. Cal. 2007) ("There is nothing to indicate . . . that [an APA] definition also applies to" a subsection of the INA); *cf. Hawaiian Tel. Co. v. Pub. Utils. Comm'n of St. of Haw.*, 827 F.2d 1264, 1271 (9th Cir. 1987) (declining to "import[]" APA definitions into interpretation of the Communications Act).

argue that it would be reasonable for the Court to rely on the APA's definition in construing the INA. [Doc. 12 at 4].

This Court's "primary task in construing statutes is to 'determine congressional intent, using "traditional tools of statutory interpretation."'" *N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277, 1281 (10th Cir. 2001) (quoting *NLRB v. United Food & Com. Workers Union*, 484 U.S. 112, 123 (1987)). This analysis begins with the language of the statute itself. *See Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613 (10th Cir. 2018). When the plain language of the statute is clear and unambiguous, the "sole function of the courts" is to "enforce [the statute] according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

Another court in this District recently rejected the government's reliance on the APA definition of "agency action" to argue that the INA's waiver provision precluded judicial review of APA claims seeking adjudication of I-601A applications. *See Granados*, 2023 WL 5831515, at *3. In *Granados*, Judge Hegarty explained that his "research of the caselaw demonstrates that the 'failure to act' under [the APA] means a government *decision* not to make a decision," as opposed to the government's failure to *yet* make a decision. *Id.* at *4 (emphasis in original). For example, in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), the Supreme Court explained that a "failure to act" as defined in the APA is "the omission of an action without formally rejecting a request—for example, the failure to promulgate a rule or take some decision *by a statutory deadline*." *Norton*, 542 U.S. at 63 (emphasis added). A "failure to act" is "properly

7

understood to be limited, as are the other items in § 551(13), to a *discrete* action." *Id.* (emphasis in original).

Judge Hegarty compared the example from *Norton* to the facts presented in *Granados*, where, like here, "[t]he Government ha[d] not decided to take no action on [the plaintiffs'] Form I-601A submissions" but would act on the submissions when it could. *Granados*, 2023 WL 5831515, at *4. He reasoned that "if the Government decided to not process the Form I-601A submissions altogether, such a decision would be a 'failure to act' under [the APA], and review of it would be barred by 8 U.S.C. § 1182(a)(9)(B)(v) as an 'agency action.'" *Id.* Or, if the government failed to make a decision by some statutory or other deadline, that would also appropriately be deemed a "failure to act." *Id.*

This Court respectfully concurs with Judge Hegarty's analysis. Mr. Lara-Esperanza does not allege that Defendants have failed to meet a statutory deadline for the adjudication of his application or have affirmatively decided to never process his application; rather, he alleges that "Defendants have unreasonably delayed and failed to adjudicate Mr. Lara-Esperanza's I-601A application for over three years." [Doc. 1 at ¶ 39]; *cf. also* [Doc. 9 at 4 (Defendants representing in their Motion that "[p]ublicly available information on USCIS's website estimates that 80% of I-601A applications take at least 44.5 months to process" and as of the date the Motion to Dismiss was filed, Plaintiff's "application ha[d] been pending 39.75 months");[5] Doc. 11 at 5 ("By failing

---

[5] This Court may take judicial notice of an agency's website without converting this action into a factual challenge to subject matter jurisdiction. *See Buhendwa v. Reg'l Transp. Dist.*, 82 F. Supp. 3d 1259, 1262 n.1 (D. Colo. 2015). As of the date of this Order, the USCIS website states that 80% of I-601A applications are processed within 44 months of filing. *See* U.S. Citizenship and Immigration Services, *Check Case Processing Times*, https://egov.uscis.gov/processing-times/ (last accessed October 24, 2023) (select "I-601A | Application for Provisional Unlawful Presence Waiver" in "Form" drop-down menu; select "Provisional Waiver of Unlawful Presence" in "Form Category" drop-down menu; select "All Service Centers" in "Field Office or Service Center" drop-down menu; click "Get processing time").

8

to act, USCIS has not yet taken an 'action . . . regarding a waiver'; in fact, that is precisely the relief Plaintiff is seeking via this lawsuit—agency action.")]. Indeed, based on the allegations in the Complaint, Mr. Lara-Esperanza's application remains pending in the processing queue. [Doc. 1 at ¶¶ 30–33]. There are thus no allegations of a "discrete" government action of which Plaintiff seeks judicial review. For these reasons, even looking to the APA's definitions as guidance, the Court does not find the APA's definition of "agency action" dispositive here.

In *Bamba v. Jaddou*, No. 1:23-cv-357, 2023 WL 5839593 (E.D. Va. Aug. 18, 2023), the Eastern District of Virginia court concluded that an action seeking to compel a decision on an I-601A application was not barred by the INA's waiver provision. First, the court looked to the plain meaning of the words "action" and "decision." "The ordinary meaning of 'action' is '[t]he process of doing something' while the definition of 'decision' is a 'judicial or agency determination after consideration of the facts and the law.'" *Bamba*, 2023 WL 5839593, at *2 (quoting *Action*, *Decision*, Black's Law Dictionary (11th ed. 2019)). The court noted that both of these definitions "infer some affirmative action, not inaction or a failure to act," but ultimately concluded that the language of the statute is ambiguous, resulting in a presumption in favor of judicial review. *Id.* (citing *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1064 (2020)); *see also McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991) ("[G]iven our well-settled presumption favoring interpretations of statutes that allow judicial review . . . it is most unlikely that Congress intended to foreclose all forms of meaningful judicial review."). After reviewing the statutory language and purpose of § 1182, and rejecting the government's arguments to the contrary, the *Bamba* court concluded that the waiver provision does not strip federal courts of jurisdiction for claims of unreasonable delay. 2023 WL 5839593, at *3–4.

9

The Court is persuaded by the *Granados* and *Bamba* decisions. The waiver provision in § 1182 does not unambiguously strip federal courts' jurisdiction to hear claims challenging the unreasonable delay in processing an I-601A application. The Supreme Court recently criticized proposed statutory interpretations that "read like elaborate efforts to avoid the most natural meaning of the text," *Patel v. Garland*, 596 U.S. 328, 340 (2022), and here, the Court cannot conclude that "decision or action" naturally encompasses government *in*action. "[I]f Congress intended a particular outcome (here, to bar any lawsuit *arising out of* the filing of a Form I-601A), it could have easily used that language." *Granados*, 2023 WL 5831515, at *5 (emphasis in original). And this Court must "presume that [judicial] review is available when a statute is silent." *Patel*, 142 S. Ct. at 1627.

The Court is respectfully unpersuaded by Defendants' arguments in support of their preferred statutory interpretation. First, Defendants rely on the Supreme Court's recent decision in *Patel* in support of their argument that "decision or action" includes the failure to act. *See* [Doc. 9 at 8]. In *Patel*, the Supreme Court considered the reach of 8 U.S.C. § 1252(a)(2)(B)(i)'s provision stripping courts of jurisdiction to review "any judgment regarding the granting of relief" under § 1255, which is the "adjustment-of-status" provision in the INA. *See* 596 U.S. at 335–36. The question turned largely on the meaning of the word "judgment"—whether it means "any authoritative decision," as the *amicus* argued, or whether it refers to some sort of decision requiring discretion, as the government and the petitioner argued. *Id.* at 1621–22. The Supreme Court ultimately determined that § 1252(a)(2)(B)(i) "does not restrict itself to certain kinds of decisions" but "prohibits review of *any* judgment *regarding* the granting of relief under § 1255 and the other enumerated provisions," *id.* at 1622 (emphasis in original); in other words, this provision of the INA "denies courts the power to correct *all* agency decisions with respect to an adjustment-of-

10

status application under § 1255. . . . [N]o court may correct even the agency's most egregious factual mistakes about an individual's statutory eligibility for relief." *Id.* at 1631 (Gorsuch, J., dissenting).

The Court respectfully disagrees that *Patel* guides this Court here. *Patel* is not directly on point and does not address the definition of "decision or action" in § 1182; moreover, "[t]he Supreme Court made clear that its holding in *Patel* is intended to be narrow and that the Court did not decide whether all 'USCIS denials of discretionary relief' are 'insulated from judicial review,' explicitly stating that the Court did not decide '[t]he reviewability of such decisions.'" *Bamba*, 2023 WL 5839593, at *3 (quoting *Patel*, 596 U.S. at 345). Plaintiff is not challenging an "authoritative decision" made by USCIS but is instead alleging that USCIS's failure to act has resulted in the unreasonable delay in the adjudication of his I-601A application. [Doc. 1 at ¶¶ 5–6, 39]. "As a result, this case differs fundamentally from *Patel*, with different statutes (Section 1252 versus Section 1182) and different circumstances (an agency finding of fact prior to a judgment versus a failure to make a decision or act)," and "neither the holding nor the analysis in *Patel* supports withholding all judicial review of USCIS's alleged failure to act within a reasonable period of time." *Bamba*, 2023 WL 5839593, at *3; *cf. Granados*, 2023 WL 5831515, at *5 (distinguishing *Patel* as "involv[ing] review of an *actual decision* by the Government." (emphasis added)).

In addition, Defendants contend that precluding judicial review of a delay in adjudication "is consistent with the surrounding language" in § 1182, which provides that the Attorney General has "sole discretion" to waive an applicant's unlawful presence, and is consistent with USCIS regulations, which state that USCIS "*may* adjudicate applications for a provisional unlawful

11

presence waiver of inadmissibility."[6]  [Doc. 9 at 7]; 8 U.S.C. § 1182(a)(9)(B)(v); 8 C.F.R. § 212.7(e)(2)(i) (emphasis added).  But the fact that USCIS has sole discretion to make decisions on I-601A applications does not bear on or expand the meaning of "decision or action" in the statute.  And although the "text of Section 1182 gives the agency discretion concerning whether they will grant or deny a waiver application, . . . Congress did not give the agency discretion *not* to process the application."  *Bamba*, 2023 WL 5839593, at *3 (emphasis in original) (citing 8 U.S.C. § 1182(a)(9)(B)(v)).

The Court is mindful that a handful of other district courts have reached the opposite conclusion and have decided that § 1182 prevents an applicant from seeking judicial relief for an unreasonable delay in the adjudication of their I-601A application.  *See, e.g.*, *Lovo v. Miller*, No. 5:22-cv-00067, 2023 WL 3550167, at *3 (W.D. Va. May 18, 2023), *appeal docketed*, No. 23-1571 (4th Cir. May 26, 2023); *Mercado v. Miller*, No. 2:22-cv-02182-JAD-EJY, 2023 WL 4406292, at *3 (D. Nev. July 7, 2023), *appeal docketed*, No. 23-16007 (9th Cir. July 17, 2023); *Mafundu v. Mayorkas*, No. 23-CV-60611-RAR, 2023 WL 5036142, at *4 (S.D. Fla. Aug. 8, 2023); *Echeverri*, 2023 WL 5350810, at *4; *Vijay v. Garland*, No. 2:23-cv-157-SPC-KCD, 2023 WL 6064326, at *2 (M.D. Fla. Sept. 18, 2023).  Respectfully, this Court is not bound by these out-of-circuit decisions.  *See Garcia ex rel. Garcia v. Miera*, 817 F.2d 650, 658 (10th Cir. 1987).  For the reasons set forth above, the Court is not persuaded by these decisions and concludes that § 1182 does not bar judicial review of Plaintiff's APA claim.  Accordingly, the Motion to Dismiss is **DENIED** to the extent it seeks dismissal of Plaintiff's first claim.

---

[6] The Court notes that Defendants do not argue that this Court lacks jurisdiction under 5 U.S.C. § 701(a)(2), which precludes judicial review if "agency action is committed to agency discretion by law."  *See generally* [Doc. 9].

**II.     The Mandamus Act Claim**

Next, Defendants argue that the Court lacks jurisdiction over Plaintiff's claim under the Mandamus Act, 28 U.S.C. § 1361, asserting first that "[l]ike his APA claim, [Plaintiff's mandamus claim] is precluded by § 1182(a)(9)(B)(v)." [Doc. 9 at 10]. In the alternative, Defendants argue that this claim "fails under the standards applicable to mandamus claims, which apply only where the action at issue is not discretionary." [*Id.*]. Defendants insist that "mandamus jurisdiction does not exist here" because Plaintiff cannot make a showing of the three prerequisites to obtain mandamus relief: (1) that he has a clear right to relief; (2) that Defendants' duty to perform is ministerial, "plainly defined and peremptory"; and (3) that he has no other adequate remedy. [*Id.* (quoting *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005))]. Mr. Lara-Esperanza does not respond to Defendants' arguments with respect to his claim under the Mandamus Act. *See generally* [Doc. 11].

"Mandamus is a drastic remedy, available only in extraordinary circumstances." *W. Shoshone Bus. Council ex rel. W. Shoshone Tribe of Duck Valley Rsrv. v. Babbitt*, 1 F.3d 1052, 1059 (10th Cir. 1993). A writ of mandamus is not an available remedy "when review by other means is possible." *Id.* (citing *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 403 (1976)). The Tenth Circuit has instructed that, where a remedy is available under the APA, mandamus relief is not available. *See id.*; *see also Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997) ("The availability of a remedy under the APA technically precludes [an] alternative request for a writ of mandamus."); *Aslam v. U.S. Dep't of State*, No. 2:22-cv-00701, 2023 WL 6163969, at *4 (D. Utah Sept. 21, 2023) (finding the plaintiff's request for mandamus relief was "precluded by the availability of judicial review under the APA"); *Granados*, 2023 WL 5831515, at *6 ("In the Tenth

13

Circuit, the availability of a remedy under the APA precludes an alternative request for a writ of mandamus. Therefore, I will examine the claim of delay under the APA." (citation omitted)).

Because Plaintiff has offered no argument in favor of the Court's jurisdiction over his second claim, he has not met his burden of establishing this Court's jurisdiction over his request for mandamus relief. Furthermore, because the Court has determined it has subject matter jurisdiction over the APA claim, it appears that mandamus relief is unavailable to Plaintiff. *Mt. Emmons Mining Co.*, 117 F.3d at 1170. Accordingly, the Court will **GRANT** the Motion to Dismiss insofar as it seeks to dismiss Plaintiff's mandamus claim for lack of subject matter jurisdiction, and Plaintiff's mandamus claim is **DISMSISED without prejudice**. *See Tista v. Jaddou*, 577 F. Supp. 3d 1219, 1231 (D.N.M. 2021) ("The statutory remedy provided by § 706(1) is an adequate remedy available to Plaintiffs that precludes mandamus relief. Therefore, the Court will dismiss Count II." (citation omitted)).

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) The Motion to Dismiss for Lack of Jurisdiction [Doc. 9] is **GRANTED in part and DENIED in part**; and

(2) Plaintiff's second claim is **DISMISSED without prejudice**.

DATED: October 24, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge